KNEISLEY LUMBER COMPANY, Appellant, v. EDWARD B. STODDARD COMPANY et al., Respondents.

St. Louis Court of Appeals, June 1, 1905.

1. **MECHANIC'S LIENS: Notice: Service on One of Several Owners.** Notice by a subcontractor of his intention to file a mechanic's lien, served upon one only of two partners who were owners of the premises, was sufficient to authorize the enforcement of a lien against that partner's undivided interest.

2. ————: **Lien Statement: Abbreviations.** A mechanic's lien statement of an account for lumber, filed with the clerk of the circuit court, which showed at the head of the column the word "lumber" and underneath numerical and abbreviated verbal designations of the different kinds of lumber furnished, was a sufficient description of the material furnished and it was competent to explain by oral testimony the meaning of the figures and abbreviations.

3. ————: **"Just and True" Account.** A "just and true" account required by the mechanic's lien law to be filed with the clerk of the circuit court of the proper county, must be an account which states the truth and demands no more than, in right and justice, the claimant ought to have.

4. ————: ————: **Dates.** The "account" required by section 4207, Revised Statutes of 1899, to be filed with the clerk of the proper circuit court as a preliminary step to the enforcement of a mechanic's lien, if otherwise sufficient, does not require that dates be given, where the affidavit attached states that the indebtedness accrued within the requisite period before the filing of the lien claim.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED.

*Geo. Hubbert* for appellant.

(1) As between the claimant and the land owners, whose property has been enhanced by the material furn-

Lumber Co. v. Edward B. Stoddard Co.

ished under a contract for construction,, often very vague descriptions of items furnished, or of property to be charged, will be held good and sufficient, but which, as to strangers to the contract might not be so held; and, clearly, the itemization here in this case is sufficient, Rall v. McCrary, 45 Mo. App. 365; DeWitt v. Smith, 63 Mo. 263; Henry v. Plitt, 84 Mo. 237; Chicago, etc., Co. v. Des Moines Park, 97 Iowa 25; Hannah Co. v. Hatzell (Mich.), 84 N. W. 52; Tulloch v. Rogers, 52 Minn. 114; Mississippi Co. v. Church, 54 Mo. 520. (2) In such cases extrinsic evidence is admissible if necessary to remove errors or ambiguities, either as to date or description in the statement and account of items furnished; and the necessity for such evidence does not affect the validity of the lien. Hilliker v. Francisco, 65 Mo. 598; Chapman v. Brewer, 47 Am. St. 779. (3) The lien papers tendered in evidence show the amounts, and that the final item was furnished and demand accrued within four months prior to the filing of the lien, and that was sufficient, in these respects, as against the landowners, though the items be not dated. Lumber Co. v. Hays, 75 Mo. App. 516; Bambrick v. Church, 53 Mo. App. 225; Bruce v. Hoos, 48 Mo. App. 161; Hayden v. Wulfing, 19 Mo. App. 353; Mitchell, etc., Co. v. Allison, 138 Mo. 50, 40 S. W. 118; Ittner v. Hughes, 133 Mo. 679, 34 S. W. 1110; Holland v. Cunliff, 96 Mo. App. 67, 69 S. W. 737; Seaman v. Paddock, 51 Mo. App. 465. McDermott v. Claas, 104 Mo. 114, 15 S. W. 995. (4) But it is submitted that, the lien papers filed are sufficiently specific, definite and full, as a whole, in respect of all material requirements, to make the same good, as to all persons whomsoever; and that the use of the symbols, figures and abbreviations appropriate to such accounts, answers all purposes, though they may not be well understood by the general public. 20 Am. and Eng. Enc. Law (2 Ed.), p. 416; Witmore v. Mars, 81 Iowa, 667; Schulenburg v. Warner, 6 Mo. App. 292.

*C. H. Montgomery* and *Frank L. Forlow* for respondents.

(1) The lien account filed in this case was not sufficient to fairly apprise the owners, Corl and Murray, of the nature and amount of the demand asserted as a lien. Bruce v. Hoos, 48 Mo. App. 164; Curless v. Lewis, 46 Mo. App. 278; Lumber Co. v. Hays, 75 Mo. App. 516; Hurling v. Flag Stone Company, 87 Mo. App. 349; Planing Mill Co. v. Allison, 138 Mo. 56, 40 S. W. 118; Lumber Co. v. Knights of Pythias, 157 Mo. 380, 57 S. W. 1059; Planing Mill Co. v. Allison, 71 Mo. App. 253. (2) The action of the court was right because there was no service of notice on the landowners as required by statute. R. S. 1899, sec. 4221; St. Louis v. Flynn, 128 Mo. 419, 31 S. W. 17; Towner v. Remick, 19 Mo. App. 208.

### STATEMENT.

The controversy in this case is over a lien for material used in the construction and building of an improvement constituting an ice factory  The defendants, G. F. C. Corl and Charles F. Murray, composing the firm of Corl and Murray, were proprietors of the ground on which the ice plant was erected and the contractors for the erection of it were Edward B. Stoddard and J. B. Hayward, doing business under the firm name of Edward B. Stoddard Company. The plaintiffs E. L. Kneisley, Harve Kneisley and Harry R. Kneisley were partners doing business under the firm name of the Kneisley Lumber Company and engaged in the sale of building material. The material for which a lien was filed was sold and delivered by the plaintiffs to the Edward B. Stoddard Company to be used in the construction of the factory which said company was erecting under contract with Corl & Murray. Plaintiffs, therefore, are subcontractors who furnished material and are

trying to enforce a subcontractor's lien. The material is alleged to have been furnished between March —, 1900, and June 8, 1900. The entire account fell due, according to the petition, on the latter date. A great part of the material, amounting in value to $1,745.49, was furnished under an original estimate submitted by plaintiffs to the contractors at the inception of the work. Many extras were ordered during the progress of the work amounting, as we gather, to about $500. Payments were made at different times aggregating $778.40, leaving a balance due of $1,468.98. The petition describes the land on which the improvement was erected, avers that the material was furnished the contractors for use in erecting the plant and was so used, that on September 25, 1900, plaintiff gave notice to the landowners of their intention to file a lien and duly filed the same with the clerk of the Newton County Circuit Court, October 26, 1900. The action to enforce the lien was against the original contractors, the firm of Edward B. Stoddard Company, and Corl & Murray, the landowners. When the contract was let to Edward B. Stoddard Company for the erection of the factory, that firm gave Corl & Murray a bond for the faithful performance of the conditions and covenants of the contract and, among other things, to keep the premises free from mechanics' liens. Plaintiffs signed the bond as sureties and Corl & Murray pleaded it in bar of the action of the Kneisley Lumber Company, averring that its condition had been broken by Edward B. Stoddard Company failing to keep the premises free from mechanics' liens, and that as the plaintiffs (under the firm name of Kneisley Lumber Company) were bound on the bond as sureties, they had covenanted that liens should be kept off the premises and were estopped to assert a lien in their own behalf. The answer avers that the Kneisley Lumber Company, by reason of the breach of the bond by the contractors, became liable to Corl & Murray in the sum of $553.70 over and above the amount of plaintiff's lien.

Judgment was prayed for that amount by way of counterclaim in addition to the plea of estoppel. The answer also contained a general denial. In reply to the plea of estoppel and the counterclaim, the plaintiffs allege that Corl & Murray had committed various breaches of the condition of the building contract during the erection of the improvements, which breaches sufficed to exonerate plaintiffs as sureties on the bond given to secure performance of the contract, and deprived Corl & Murray of the right to assert an estoppel against the plaintiffs by reason of the latters' suretyship, or to a judgment on the bond by way of counterclaim.

The case originated in the Newton County Circuit Court but went by change of venue to Greene County. The lien claim or account which was filed in the office of the circuit clerk of Newton county was verified by the affidavit of Harry R. Kneisley, and, among other essential statements, says the lien demand accrued within four months prior to the filing of the lien, and that ten days before filing it plaintiffs gave notice of their demand to Corl & Murray and that the lien claim would be filed. In no part of the lien papers, neither in the statement of facts preceding the account proper nor in the affidavit, was it stated when the account began. That portion of the account which sets out the various items of extras furnished by plaintiffs, contains a numerical notation of the dates when the different extras were furnished; but that portion which lists the items furnished under the original estimate gives no dates either in numbers or words. At the head of the first column of each sheet of the account appears the word "Lumber," and under that word certain abbreviated trade descriptions of the items furnished. The account is too long to be set out in full, but we will transcribe part of it:

## Lumber Co. v. Edward B. Stoddard Co.

| ALL OUR LUMBER UNDER SHEDS | KNEISLEY LUMBER COMPANY, | SASH, DOORS BLINDS |
|---|---|---|

**KNEISLEY LUMBER COMPANY,**

Everything in Building Material.

PLANS AND ESTIMATES FURNISHED

Phone 79

ALL OUR LUMBER UNDER SHEDS

SASH, DOORS
BLINDS
MOULDINGS
LIME, CEMENT
·PLASTER, LATH
SHINGLES
PAINT & OILS
EVERYTHING

In Acc't With *Edw. B. Stoddard Co.*    Neosho, Mo., *Sept, 22, 1900*

| Articles | Pcs | Size | Length | feet | total ft. | at | $ | Amt. | T'l amt | Remk's |
|---|---|---|---|---|---|---|---|---|---|---|
| *Lumber* | | | | Ice | Plant a | cc't | | | | |
| | | | | orig | inal esti | m at | e | | | |
| No 1 Rgh | 10 | 8x8 | 16 | 853 | | | | | | |
| " | 2 | " | 14 | 149 | | | | | | |
| " | 4 | 8x10 | 14 | 373 | | | | | | |
| " | 6 | 6x8 | 16 | 384 | | | | | | |
| " | 1 | 8x8 | 7 | 37 | 1796 | " | 23.00 | 41.31 | | |
| S & E | 50 | 2x12 | 24 | | 2400 | " | 20.00 | 48.00 | | |
| " | 30 | 2x6 | 24 | | 1440 | " | 19.00 | 27.36 | | |
| " | 100 | 2x12 | 16 | | 3200 | " | 18.50 | 59.20 | | |
| " | 85 | 2x8 | 16 | | 1813 | " | 17.50 | 31.73 | | |
| " | 25 | " | 10 | | 333 | " | 18.00 | 5.99 | | |
| " | 350 | 2x6 | 16 | | 5600 | " | 17.50 | 98.00 | | |
| S S | 75 | 1x6 | 16 | | 600 | " | 18.00 | 10.80 | | |
| S & E | 50 | 2x6 | 12 | | 600 | " | 17 50 | 10.50 | | |
| " | 1000 ft | 2x12 | | | 1000 | " | 18.50 | 18.50 | | |
| Com Flg | 6000 " | | 6 " | | 6000 | " | 20 00 | 120.00 | | |
| Star dp sdg | 6000 " | | 6 " | | 6000 | " | 24.00 | 144.00 | | |
| " S 4 S | 300 " | | 1¼x4 | | 300 | " | 30.00 | 9.00 | | |
| Com Flg | 33000 " | | 4 " | | 3300 | " | 20.00 | 660.00 | | |
| No 1 S S | 2000 " | | 8 " | | 2000 | " | 19.00 | 38.00 | | |
| S 4 S | 100 | 2x4 | 16 | | 1067 | " | 19.00 | 20.27 | | |
| " | 300 | 2x2 | 16 | | 1600 | " | 22.00 | 35.20 | | |
| " | 300 | 1x3 | 16 | | 1200 | " | 23.00 | 27.60 | | |
| S 4 S | 500 | 1x2 | 16 | | 1333 | " | 23.00 | 30.66 | | |
| No 1 S S | 500 ft· | 1x6 | | | 500 | " | 18.00 | 9.00 | | |
| Star Flg | 600 " | | 4 " | | 600 | " | 22.00 | 13.20 | | |
| No 1 P & E | 1000 ft | 2x6 | | | 1000 | " | 17.50 | 17.50 | | |
| " | 9 | 4x6 | 12 | | 216 | " | 23.00 | 4.97 | | |
| Oak | 500 ft | 2x12 | | | 500 | " | 14.00 | 7.00 | | |
| " | 12 | 6x6 | 12 | | 432 | " | 15.00 | 6.48 | | |
| Mineral Wool | 4700 | lbs | | | 4700 | " | 35.00 | 82.25 | | Price per ton |
| P & B Paper, | 400 | sqs | | | 400 | " | 30 | 120.00 | | |
| Ruberoid Roofing | 50 | sqs | | | 50 | " | 2.75 | 137.50 | $1834.02 | |
| | | | | Les | s ab't 5 | per | cent, | – – | 88.53 | |
| | | | | Our | estimat | e - | – | - - | $1745.49 | |
| | | | | EX | TRAS | | | | | |
| 4/16 Ch S 2 S | 4 | 1¼x6 | 16 | 40 | | | | | | |
| " | 5 | " | 14 | 44 | | | | | | |
| " | 8 | " | 12 | 60 | | | | | | |
| " | 1 | " | 8 | 5 | | | | | | |
| " | 4 | 1¼x8 | 16 | 53 | | | | | | |
| " | 2 | " | 12 | 20 | | | | | | |
| " | 1 | " | 6 | 5 | | | | | | |
| " | 1 | " | 8 | 7 | | | | | | |
| " | 1 | 1¼x10 | 14 | 15 | | | | | | |
| " | 16 | 1¼x5 | 12 | 100 | | | | | | |
| " | 5 | " | 14 | 36 | 385 | " | 30.00 | | 11.55 | |
| 4/16 No 1 S S | 1 | 1x12 | 12 | 12 | | | | | | |
| " | 2 | " | 14 | 28 | 40 | " | 20.00 | .80 | | |
| S & E | 2 | 2x4 | 18 | 24 | | | | | | |
| " | 2 | " | 12 | 16 | | | | | | |
| " | 1 | " | 14 | 9 | 49 | " | 18.00 | .88 | | |
| Water cap | 78 ft | 3¼ | | | 78 | " | 2.00 | 1.56 | | |
| Parting stop | 160 " | | | | 160 | " | .60 | .96 | | |
| O G " | 160 " | | | | 160 | " | .60 | .96 | 5.16 | |

Lumber Co. v. Edward B. Stoddard Co.

| Articles | Pcs | Size | Length | feet | total ft. | at | $ | Amt. | T'l amt. | Remk's |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Over | r Sh | ipments | in | Cars | | | |
| S 4 S | 144 ft | 2x2 | | | 144 | " | '22.00 | 3.17 | | |
| " | 131 " | 1x3 | | | 131 | " | ,23.00 | 3.01 | | |
| " | 121 " | 1x2 | | | 121 | " | " | 2.78 | | |
| No 1 S S | 576 " | 1x6 | | | 576 | " | 19.00 | 10.94 | | |
| S & E | 232 " | 2x6 | | | 232 | " | 18.00 | 4.18 | 24.08 | |
| | | | | | | | | | 2247.38 | |
| | | | | CR | EDITS | | | | | |
| No 1 S & E | 25 | 2x8 | 10 | 333 | 333 | " | 18.00 | 5.99 | | Short'g |
| Star Dp Sdg | 681 ft | | 6 ft | | 618 | " | 24.00 | 14.83 | | " |
| " S 2 S | 39 ft | 1¼x4 | | | 39 | " | 31.00 | 1.21 | | " |
| Ruberiod Rfg | 50 Sqs | | | | 50 | " | 2.75 | 137.50 | | Rebate |
| Drop Sdg | 104 ft | | | | 104 | " | 24.00 | 2.50 | | Retrn'd |
| Oak | 1 | 2x12 | 18 | 36 | 36 | " | 14.00 | .50 | | " |
| .S 4 S | 77 | 1x2 | 16 | 205 | | | | | | " |
| | 162 | 1x3 | 16 | 648 | 853 | " | 23.00 | 19.62 | | " |
| Lime | 4 bbls | | | | 4 | " | .90 | 3.60 | 185.00 | " |
| Sewer Pipe | 160 ft | 6" | | | 160 | " | .02 | 3.20 | | Rebate |
| Wool Sks | 174 M | T's | | | 174 | " | .10 | 17.40 | | Retrn'd |
| and | 2½ load | s 3.25; | 3½ bbls | | 50 | " | 20.50 | 3.75 | | " |
| Com Flg | 40 ft | | 6 " | | 40 | " | 20.50 | .82 | | " |
| Oak | 1 | 2x10 | 12 | 20 | | | | | | " |
| | 1 | 2x12 | 12 | 24 | | | | | | " |
| | 1 | 4x6 | 12 | 24 | 68 | " | 12.50 | .85 | 26.02 | " |
| Ruberiod Rfg | 50 Sqs | | | | 50 | " | 1.25 | 62.50 | | Rebate |
| S 4 S | 9 | 1x3 | 16 | 36 | | | | | | Retrn'd |
| " | 2 | " | 14 | 7 | 43 | " | 23.00 | .99 | | " |
| " | 1 | 2x2 | 16 | 5 | | | | | | " |
| " | 1 | 2x2 | 14 | 5 | 10 | " | 22.00 | .22 | | " |
| No 1 S & E | 3 | 2x8 | 14 | 56 | 56 | " | 18.00 | 1.00 | | " |
| Com Flg | 26 | 1x4 | 12 | 104 | 104 | " | 18.50 | 1.92 | | " |
| 6/10 | | | BY CASH | - | - | - | $ | 500.00 | 778.40 | " |
| | | | BALANCE DUE | - | - | | | | $1468.98 | " |

It will be observed that the account has at its head the date September 22, 1900. But it is agreed that this was the date when the account was made out prepara- tory to giving notice of the intention to file a lien and not the date when any of the first material was furnished. Plaintiffs offered the lien claim in evidence at the trial but the court excluded it. An exception was saved to that ruling. The notice of intention to file a lien was served, according to the return of the sheriff, on the firm of Corl & Murray by delivering a copy to one member of the firm (G. F. C. Corl). In this action to enforce the lien, personal service of the writ of summons was ob- tained on J. P. Hayward, who was in Newton county. The defendant Edward B. Stoddard, was a resident of Chicago, Illinois, when the action was instituted, and an affidavit of his non-residence in the State of Missouri was filed with the petition. A summons was issued to the sheriff of Cook county, Illinois, commanding him to serve Stoddard in his bailiwick, and that writ was

executed by personally serving Stoddard in Illinois. The trial court stated that it excluded the lien claim because it was defective on its face in respect of dates and items and could not be amended. Plaintiffs tendered proof of the other allegations of their petition necessary to make a case on the lien account; but all the evidence tendered was excluded. Thereupon the court gave this declaration of law:

"The court declares the law and instructs the jury that, upon the plaintiff's evidence, which tends to prove the allegations in their petition, the plaintiffs cannot recover and the verdict must be against the plaintiffs— in favor of Corl and Murray, because the plaintiffs' lien account is not sufficient in law as to dates or items —in favor of Stoddard and Hayward because there was no service on them in this state to support a personal judgment."

An exception was saved to that declaration and plaintiffs took a nonsuit with leave to move to set it aside. A motion to set it aside was filed in due time containing these grounds:

"1st. The court erred in excluding the plaintiffs' lien account and statement and claim and evidence.

"2nd. The court erred in holding that evidence the plaintiffs offered was insufficient to support a judgment in their favor.

"3rd. The court erred in holding that the court had no jurisdiction for personal judgment against Stoddard & Co.

"4th. The court erred in giving a declaration and instruction peremptorily directing a verdict against plaintiffs, against the law and contrary to the evidence adduced and offered by them.

"5th. The court erroneously compelled plaintiffs to take the said nonsuit by its adverse rulings as to the law of the case and by excluding evidence."

The above motion was overruled and plaintiffs appealed.

GOODE, J. (after stating the facts).—1. It is apparent that the learned circuit judge erred in holding there could be no personal judgment against the defendant Hayward. He was a member of the firm of Edward B. Stoddard Company and was one of the original debtors for the material in controversy. As he was personally served with process in the case, plaintiffs were entitled to judgment against him. The court below was under the impression that Hayward, as well as Stoddard, had been brought into court by constructive service and, therefore, was not amenable to a personal judgment. Counsel for the defendants say the court's attention was not called to this erroneous ruling in the motion for a new trial; but by inspecting the grounds of that motion it will be seen that it was called to the court's attention in a sufficiently definite way. Besides, the declaration of law given by the court explicitly declared there was no service on Stoddard and Hayward in this State to support a personal judgment. That declaration was erroneous as regards Hayward, and the motion for new trial complained of the declaration.

2. The notice of an intention to file a lien was served only on Corl, one of the owners of the premises, and not on his co-owner, Murray. For this reason the contention is preferred that the lien must fail, as the law requires subcontractors to give notice to all the owners of premises of an intention to file a lien. There may be a question as to whether service on Corl would support a judgment enforcing a lien against Murray's interest in the premises, although the two were partners and in some sense agents for each other. This question we waive, as it does not call for present decision. We have no doubt that, notice having been served on Corl, the lien can be enforced against his undivided interest.

3. The important and difficult question is whether the lien statement was sufficiently full and definite to satisfy the law. The lower court held it inadequately stated the items and the dates when they were furnished.

We think the description of the items of material furnished meets the requirement of the law. The heading of the first column of each page showed the different items following were lumber; because the word "Lumber" stood at the head of the column. Underneath were numerical, and abbreviated verbal, designations of the different kinds of lumber furnished. Such abbreviations are understood in trade and employed constantly in making out bills and stating accounts. It was competent to explain by oral testimony the meaning of the figures and abbreviations. The figures, abbreviated words and initial letters, such as "S. & E.; Com. Flg; No. 1 Rgh. Star dp sdg," doubtless can be shown to have a well-known meaning, and to be descriptive of the kinds and sizes of the different lots of lumber furnished. Sometimes the material was named; for instance, "Ruberoid Roofing." The question of the sufficiency of such designations of material in a lien account was passed on by our Supreme Court in Henry v. Plitt, 84 Mo. 237, 241. The court said the heading of the account showed that the figures used to designate the items referred to lumber, and as figures instead of words are in common use in trade to indicate articles sold, the statement was good. The same proposition was passed on in Schulenburg v. Werner, 6 Mo. App. 292; Holland v. Cunliff, 96 Mo. App. 67, 69 S. W. 737. In those cases the accounts were no more full and definite in describing the different lots of material than is the present account. We, therefore, deem it not an open question that this one sufficiently describes the kinds of material furnished to be good under the mechanic's lien statutes.

4. The next point to be considered is the effect of the absence of dates. As to the time the extras were furnished, the months and days of the month are indicated by numbers, as is customary in commercial affairs. These numerical designations could have been explained by testimony and the time they indicated defined. But

the difficulty is that no year is given in the bill of extras and the part of the account containing the lumber furnished under the original estimate has no notation of dates either in words or figures. The account itself may be assisted by the affidavit attached to it. [Mitchell Planing Mill Co. v. Allison, 138 Mo. 50, 56.] But the affidavit contains nothing to throw light on when the material was furnished except the statement that the demand accrued within four months prior to the filing of the lien. Stating the months and days, but not the year, leaves the time when the material was furnished, uncertain. Therefore, the lien paper shows no more than that the demand accrued within four months prior to the filing of the claim in the office of the circuit clerk. The last extra was furnished June 8, as is shown by the notation "6-8." The last credit of $500 was entered June 10 "(6-10)." The question for decision is as to whether the statement that the demand accrued within four months, without any showing as to when the first material was furnished, or the extreme dates between which all the material was furnished, or any dates when the different items were furnished, makes a good lien account. In answering this question the first thing to ascertain is what our statutes say on the subject, if anything. The statutes require every original contractor within six months, and every journeyman within sixty days, and every other person seeking a lien within four months, after his indebtedness accrues, to file in the office of the clerk of the circuit court of the proper county a just and true account of the demand due him, after all just credits have been given, the same to be verified by oath. [R. S. 1899, sec. 4207.] The railroad lien law expressly requires dates to be given (R. S. 1899, chap. 47, art. 4 ). The other lien statutes say nothing about dates and their language exacts nothing in regard to time except that the lien must be filed within a certain period after the indebtedness accrues. In the case of a subcontractor this

period is four months. Now, as the plaintiffs, who were subcontractors, averred in the lien paper that their demand accrued within four months of the filing, they complied with the language of the statutes. If any more in regard to the dates or time is necessary, it is on account of the implication arising from the use of the expression "a just and true account." Are the dates of the different items of an account, or of the first and last items, essential ingredients of a just and true account, according to the meaning of that term in the mechanics' lien law? By "just and true" is meant an account which states truth and not falsehood, and demands no more than, in right and justice, the claimant ought to have. The question comes down then to the legal meaning of the word "account;" and if we turn to the books we find that the word has no precise and inflexible meaning in law, but is one of diverse significations. [Morrisett v. Wood, 128 Ala. 505.] The primary idea of an account is a statement of debits and credits between parties who have been doing business with each other. [Whitewell v. Willard, 42 Mass. 216; Nelson v. Possey Co., 105 Ind. 287; Purvis v. Kroner, 18 Ore. 414; Turgeon v. Cote, 88 Me. 108.] An account has been defined as a written statement of pecuniary transactions; a detailed statement of demands in the nature of debit and credit between parties, arising out of contract or some fiduciary relation. [1 Am. & Eng. Ency. Law (2 Ed.), p. 434.] Another text-book says an account is no more than a list of items, whether debits or credits; an exhibit of charges and credits growing out of mutual dealings, presented in such form as to facilitate the determination of the balance due by simple calculation; that the term has no clearly defined legal meaning, but the primary idea is that of debit and credit. [1 Cyc. 362.] The conclusion from these definitions is that giving the dates of various transactions is not indispensable to an account; though dates, we know, are usually affixed in stating a bill of

debits and credits. The conclusion is to be derived, also, that the word "account" is not a word of precise technical import, requiring the presumption that the Legislature in using it, meant to call for a statement of particulars containing essential and well-known parts. There are technical words which convey a meaning not only definite, but full and precise. For instance, if the word "deed" is used, it imports an instrument possessing certain elements, or parts, which at once occur to one of legal training. The courts of this State have had occasion to pass on the term "account" as used in the mechanics' lien law. In McWilliams v. Allen, 45 Mo. 573, it was said there is a broad distinction between an account and the amount due; the balance due is but the result of the debit and credit sides of an account; it implies mutual dealing, without which there could be no balance; what the legislature intended was that the lien —or should exhibit his demand fully and thereby show the balance sought to be imposed as a lien, instead of merely stating the balance. But the Supreme Court said in Mitchell, etc., Co. v. Allison, 138 Mo. 50, that the authority of McWilliams v. Allen had been shaken in regard to the necessity of itemizing an account, by the later case of Hilliker v. Francisco, 65 Mo. 598, which went far toward authorizing a lumping charge under certain circumstances. In Coe v. Ritter, 86 Mo. 277, 287, it was said, incidentally, that the dates of items ought to appear in a lien account; and this ruling was taken in Curless v. Lewis, infra, as establishing the rule that dates are indispensable. That remark was made in a case wherein the question for decision was as to whether a lien for material, or a deed of trust on the premises, should have priority, and the decision depended on when the material was furnished. A lien attaches in favor of any one who furnishes material for an improvement after it is begun, and the lien enjoys priority over a subsequent incumbrance; but not over an incumbrance earlier in point of time than the inception of the work.

It is obvious that the date when an improvement is start-
ed and materials furnished for it, is vital when the con-
troversy is concerning which has priority, a lien or an
incumbrance.   In Coe v. Ritter, supra, the dates when
the several lots of material were supplied were stated
in the lien account and, according to those dates, the
deed of trust was entitled to precedence.   But the right
was asserted to show the dates given in the lien paper
were incorrect and that part of the material was fur-
nished earlier than they indicated.   This evidence was
rejected on the ground that the statutes called for a just
and true account and the tenure of others interested in
the premises, who had relied on the statement filed with
the circuit clerk, ought not to be jeopardized by contra-
dicting the statement.   That decision did not touch the
question in hand.   It is difficult to see how dates can
be important when the controversy is between a proprie-
tor of premises, who contracts in person for an improve-
ment, and a party who supplies material for the im-
provement.   Of course, if the material was supplied more
than five years before the action was instituted, and the
earlier items were not kept alive by a running account,
those items would be barred by the Statute of Limita-
tions.   That, however, would be matter of defense in a
suit to enforce the lien; and the necessity of showing it
on the face of the lien claim is far from obvious.   [Mitch-
ell, etc., Co. v. Allison, supra.]

As the term "account" has no precise technical
meaning, when interpreting a statute in which it is
used, we should adopt that one of its common meanings
which will realize best the main object of the statute.
Now as a statement of debits and credits may either con-
tain dates or not, and still constitute an account, we
should not require any fuller showing of dates in a lien
account than the language of the lien statutes calls for,
or than will aid in accomplishing the purpose of those
statutes.   To require more would encumber the law with
a useless rule.   The principal facts to be shown by a lien

statement are what material or work the claimant wishes a lien for and when the indebtedness accrued. Such a showing enables the owner of the premises to ascertain whether the work or material actually went into the improvement and whether the statement was filed in the time limited. By ascertaining the truth about those matters, the owner will know that his property is or is not liable, prima facie, for the claim. So much regarding what strikes us as the sound theory of the question. Let us return to the cases.

There has been a diversity of rulings by the appellate courts of this State as to the necessity of dates to a lien account. It may be said that all the decisions hold that a date need not be affixed to every item. The real problem is as to whether the lien paper must show the extreme dates of the account—that is, the dates of the initial and the final transaction—or whether it suffices to show that the demand accrued within four months before the filing of the lien account; or whatever the period may be, depending on the character of the claimant. The decision in Curless v. Lewis, 46 Mo. App. 278, was that a just and true account meant an itemized account with dates; and that a lien paper which did not show the beginning of the account, but did show that the demand accrued within six months prior to the filing (the claim was that of an original contractor) was insufficient. The same court (Kansas City Court of Appeals) declared the same doctrine in Mitchell, etc., Co. v. Allison, 71 Mo. App. 251. The latter case was certified to the Supreme Court as in conflict with the decision of this court in Haydon v. Wulfing, 19 Mo. App. 353. In the following decisions accounts that gave the initial and the final dates of various transactions, but not the dates of the intermediate items, were held good. [Mesker v. Cutler, 51 Mo. App. 341; McDermott v. Claas, 104 Mo. 14, 23, 15 S. W. 995; Ittner v. Hughes, 133 Mo. 679, 684, 34 S. W. 1110.] The first and last dates appeared, too, in Mitchell, etc., Co. v. Allison; for though there was

a long account in that case, consisting of many items to
which no dates were affixed, the account closed with
these words: "Delivered and used in the building above
described between April 20, 1893, and July 19, 1893."
The Kansas City Court of Appeals held that those
words were not enough and that the lien claim was void;
but the Supreme Court took the other view. It will be
perceived that as the account in hand lacks the initial
date and fails to show more as to the final date when
material was furnished than that the demand accrued
within four months of the filing of the lien, the point in
decision in the Allison case is different from the one we
are called on to decide. Still, the tone of the Supreme
Court's decision favors the validity of the present lien.
The opinion deals with the meaning of the word "ac-
count" and says "the account which this law contem-
plates is such a statement of the claim as fairly apprises
the owner and the public of the nature and amount of
the demand asserted as a lien. The account may consist
of one or more items. It may be all on one side, or mu-
tual in its showing. To be valid, however, it must dis-
close on its face that the demand is of a sort within the
terms of the lien law. The affidavit required to veri-
fy the account may be considered along with the account
itself in ascertaining the sufficiency of the latter." The
Supreme Court's opinion pointed out that the decision
of the Kansas City Court of Appeals was in conflict
with the decisions of this court in several cases
besides Haydon v. Wulfing. If the opinion had
held in terms that Haydon v. Wulfing was cor-
rectly decided, we would have no difficulty with
the present case. But it made no comment on the
decisions of this court. In effect it overruled the de-
cision in Curless v. Lewis, supra, which was discarded
as authority by the court which decided it. In Haydon
v. Wulfing, 19 Mo. App. 353, the account contained no
dates except one at the top which was taken as the time

113 app—21

when the account was rendered and not the time when the material was furnished; just as we take the date at the head of the account in controversy to be. The opinion of Judge ROMBAUER gave attention to some of the decisions in this State on the subject and contrasted our statute, which does not require dates in a lien account, with the Pennsylvania statute, which does. After noticing the authorities the opinion said:

"In view of the foregoing, we have come to the conclusion that the account required by the statute is not necessarily invalidated as a lien because it fails to give the dates when the work was done, provided it appears from it or other parts of the lien paper filed, that it was completed, and the indebtedness accrued within the period required by the statute to entitle the contractor, or subcontractor, to a lien."

In Cole v. Barron, 8 Mo. App. 509, the months and days of the months when the material was supplied, were given in the lien statement, but not the year. The opinion said that if the items were over four months old the right to a lien was gone; but that the account was a just and true one within the meaning of the statutes, as every object of the law was fulfilled. The court held the Pennsylvania cases were not in point on account of the difference between the Pennsylvania and the Missouri statutes.

In Kern v. Pfaff, 44 Mo. App. 29, the account contained no dates, but the defect was held to be supplied by the averment in the affidavit that the demand accrued within six months prior to the filing of the lien.

In Bambrick v. Assn., 53 Mo. App. 225, the account was practically like the one before us and without dates. It was adjudged sufficient on the authority of Haydon v. Wulfing, supra and Kearney v. Wurdeman, 33 Mo. App. 447. The latter case appears not to be in point, because dates were given in the account involved.

In Brockmeier v. Dette, 58 Mo. App. 607, the ac-

count was for 2,409 hours of carpenter work, a lump charge. It was held valid.

The foregoing decisions of this court show, beyond question, that the doctrine it upholds is that a lien account is good though no dates are given, provided the attached affidavit shows the indebtedness accrued within the requisite period before the filing of the lien claim in the office of the circuit clerk. Decisions of like tenor can be found in other states having statutes similar to our own. [Noel v. Kennealy, 37 Neb. 879; Chapman v. Brewer, 43 Neb. 890.]

In Peoples' Lumber Co. v. Hayes, 75 Mo. App. 516, the Kansas City Court of Appeals dealt with a lien statement containing a large number of items, many of which had no dates. The court said that, following the decision of the Supreme Court in the Allison case, the lien account must be held sufficient, as the affidavit contained a statement that the demand accrued four months prior to the filing of the lien.

In Sanderson v. Fleming, 37 Mo. App. 595, the account had no dates and was not cured by an averment elsewhere in the lien paper that the indebtedness accrued within the time prescribed for filing the lien claim; therefore the court held that Haydon v. Wulfing did not control the decision and the lien must fail.

In the work of a leading text-writer on the subject the doctrine seems to be maintained that unless the lien statute requires dates, it is sufficient if the statement of a lien shows it was filed within the requisite time after the indebtedness accrued. [Phillips, Mechanic's Liens (3 Ed.), sec. 359; citing Knauft v. Miller, 45 Minn. 61; Johnson v. Stout, 42 Minn. 514.]

We have no decision by the Supreme Court on the exact point involved; but incline to the view that the Allison case sanctions the previous rulings of this court, which were to the effect that a lien paper is good if the affidavit states that it was filed within the statutory period after the indebtedness accrued, though no dates are

given. We must, therefore, rule that the learned circuit judge erred in excluding the lien account of the present plaintiffs.

The estoppel and counterclaim pleaded in the answer call for no attention at this stage of the case, in view of the above ruling.

The judgment is reversed and the cause remanded. All concur.