## PITTSBURG STEEL COMPANY, a Corporation, Appellant, v. L. W. COTTENGIN, Respondent.

Springfield Court of Appeals, April 14, 1914.

1. **SALES: Contract of: Modification and Substitution: What is Not.** A contract of sale is not modified nor substituted by a new one, where such contract provided for payment of freight by the vendor and upon the arrival of the goods, freight not having been prepaid, the vendor's agent induced the vendee to accept the goods and pay the freight as so much of the purchase price to be credited on such purchase price when the freight bill was sent to the vendor.

2. **CONTRACTS: Written: Parol Evidence Inadmissible, When.** In order to make parol evidence of a term of a contract inadmissible, the written contract must be complete on its face, free from ambiguity and not contradictory of itself.

3. **APPELLATE PRACTICE: Abstract to Contain What: Rule.** Court rule number 15, which provides that the abstract of the record shall "set forth so much of the record as is necessary to a full and complete understanding of all the questions," is not complied with by a reference therein to the original bill of exceptions.

4. **CONTRACTS: Written: Ambiguity: Parol Evidence to Explain.** Instance of a written contract which is so ambiguous as to admit oral evidence of the circumstances and reasons for making the contract and showing the true understanding and meaning of same.

Appeal from Wright County Circuit Court.—*Hon. C. H. Skinker,* Judge.

AFFIRMED.

*Jackson & Jackson* for appellant.

(1) Antecedent or contemporaneous verbal stipulations under such facts as shown in this case are inadmissible to vary or contradict a written contract. Helmrichs v. Gehrke, 56 Mo. 79; Bank v. Bank, 149 S. W. 495; McDaniels v. United Rep. Co., 165 Mo. App. 678, 148 S. W. 464; Wheless v. Grocery Co., 140 Mo. App. 572, 120 S. W. 708. (2) Even in cases of ambiguity in a written contract the parties may not say in plain terms what was the intention, and parol evidence is admissible not for the purpose of contradicting the writing but for the purpose of explaining the ambiguity by directing the court to the intent of the *writing* so that the *writing* may be sustained as the true contract of the parties. McDaniels v. Railroad, 165 Mo. App. 678; Wheless v. Grocery Co., 140 Mo. App. 572; Dec. Dig. Evidence, par. 448, pages 1245-6; Cameron v. Sexton, 110 Ill. App. 381. (3) The court should have instructed the jury that if said G. L. Robinson had no authority to make any contract other than one entered into in writing on blank written order forms prepared for the company that they should find the issues for the plaintiff, as prayed for in instruction number 3 by plaintiff. Bronson v. Implement Co., 135 Mo. App. 483, 116 S. W. 20; Huffcut on Agency, page 135, par. 106; White & Co. v. Massy, 65 Mo. App. 260; Carson, Pierie Scott & Co. v. Culver, 78 Mo. App. 597; Lencke & Co. v. Cohen, 129 S. W. 1002.

*Mansfield & Cox* for respondent.

(1) An ambiguous contract may be explained and the condition of the parties at the time and the reasons for making the contract and the circumstances under which it was made may be shown by parol. Bertig-Smythe v. Lumber Co., 112 Mo. App. 259, 267; Thetford v. Ins. Co., 140 Mo. App. 254, 257; Lumber Co. v. Stoddard Co., 113 Mo. App. 306, 314-315. (2) The construction put upon the contract by the parties who made it was admissible. Construction Co. v. Tie Co., 185 Mo. 25, 73. (3) The authority of an agent is as great as the necessities of the business in which he engages for his principal and when the principal puts the agent forward as having full authority as to the particular matter involved or places the agent in a position where others are justified in the belief that his powers are general as to the matter involved, then limitations on his authority imposed by the principal do not affect those with whom he deals unless notice of the limitation is brought home to the party. Baker v. Railroad, 91 Mo. 152, 159; Porter v. Woods, 138 Mo. 539, 550, 551; Woolen Mills v. Meyers Co., 43 Mo. App. 124, 130; Meier v. Proctor & Gamble Co., 81 Mo. App. 410, 418; Railroad v. Railroad, 110 Mo. App. 300, 309; Rice v. Groffman, 56 Mo. 434; McNichols v. Nelson, 45 Mo. App. 446; Harrison v. Railroad, 50 Mo. App. 332, 337; Edwards v. Thomas, 66 Mo. 468, 482-483.

STURGIS, J.—This suit grew out of a dispute as to whether the plaintiff as seller or the defendant as buyer should pay the freight on certain wire fencing sold and shipped by plaintiff to defendant. The defendant is a country merchant doing business at Grove Springs, Missouri, but whose railroad station is Niangua, Missouri, and plaintiff's business and location is indicated by its corporate name. The terms of the sale are shown by a written order or contract signed

by defendant and attested by plaintiff's salesman, who called on defendant and solicited this order. The petition counts on goods, wares and merchandise sold and delivered to defendant, amounting to $415.72, and admits payment of $330.72 thereof, leaving a balance due of eighty-five dollars. The defendant pleads payment in full, which is explained by his having paid the freight amounting to eighty-five dollars, while plaintiff claims that the written order requires defendant to pay the freight and that this amount so paid cannot be credited on the purchase price. The jury found for defendant.

The evidence abundantly shows that the real agreement made between the defendant and plaintiff's salesman was that the plaintiff would pay the freight. If the evidence showing this real agreement is admissible, then the verdict is abundantly sustained. When the goods arrived at the local railroad station and defendant found the freight was not prepaid he refused to receive the same and the car stood on the track several days. Thereupon plaintiff's salesman, the same one who had taken the order originally, explained to him that while the agreement was that the plaintiff should pay the freight, yet that defendant should pay the same to the railroad, receive the goods and on sending in the freight bill the amount so paid would be credited on the purchase price. The defendant thereupon did this. This later arrangement is spoken of during the trial as a new agreement on the part of plaintiff to pay this freight and is sought to be repudiated by plaintiff on the ground that this salesman had no authority to make such agreement or to change the written contract, as his authority ended with his taking the order and transmitting it to the plaintiff. [Groneweg & Co. v. Estes, 144 Mo. App. 418, 128 S. W. 786.] On the other hand, defendant contends that as the salesman had authority to sell goods, fix prices, etc., he would have power to contract with reference to the payment of the freight

on same as a necessary incident to selling goods to be delivered at distant points and that such authority would not be lost at least until the goods sold were actually delivered. The defendant argues in support of the salesman's authority to bind his principal to pay the freight the familiar rule of law that the authority of an agent is as great as the necessities of the business in which he engages for his principal and when the principal puts the agent forward as having full authority as to the particular matter involved, or places the agent in a position where others are justified in the belief that his powers are general as to the matter involved, then limitations on his authority imposed by the principal do not affect those with whom the agent deals unless notice of the limitation is brought home to the other contracting party. [Porter v. Woods, 138 Mo. 539, 550, 39 S. W. 794; Meier v. Proctor & Gamble Co., 81 Mo. App. 410, 418; McNichols v. Nelson, 45 Mo. App. 446, 452.]

But we think it is apparent that plaintiff's selling agent and the defendant were not making or intending to make a new contract or to modify the old one with reference to the payment of this freight. Defendant was maintaining that the original written order for the goods provided for plaintiff paying the freight and that he would not accept same on any other terms. According to defendant's evidence, the salesman conceded that such was the original contract and he merely induced defendant to accept the goods by paying the freight as so much of the purchase price and to be credited thereon on sending in the freight bill—a common method of doing business when the freight is to be paid by the shipper. There was therefore no new or modified contract made or attempted to be made and the selling agent's authority to make one is not material.

The original contract is in writing and it is contended by plaintiff that it shows on its face that de-

fendant was to pay the freight in dispute on the wire fencing; and also shows on its face that it was not to be a completed contract until accepted by the plaintiff. This being the case, the plaintiff only accepted the contract as written and that alone became and was the contract of the parties. The plaintiff unsuccessfully objected to all the oral evidence of defendant tending to show that the real agreement of the parties provided that plaintiff should pay this freight, the grounds of the objections being that the terms of a written contract cannot be changed, added to, modified or contradicted by parol evidence. This is undoubtedly good law, provided, of course, that the written contract is complete on its face, free of ambiguity and not contradictory of itself.

As plaintiff is the appellant, it is incumbent on it to so present its case to this court as to show that the contract in question is such as it claims, that is, that it provides in unambiguous terms that defendant had to pay the freight. We find, however, that while this case is brought here on what is known as the short form, plaintiff's abstract of the record nowhere sets out a copy of the contract order relied on or even the substance thereof but refers us to the "bill of exceptions" for such information. The rules of this court (see Rule Fifteen) and of all the other appellate courts of this State provide, and necessarily so for an intelligent procedure on appeals, that the abstract of the record shall "set forth so much of the record as is necessary to a full and complete understanding of all the questions presented to this court for decision," and we cannot be referred to the original bill of exceptions for such information. [Merrill v. Central Trust Co., 46 Mo. App. 236, 242; Coleman v. Roberts, 214 Mo. 634, 114 S. W. 39; Sonnenfeld v. Rosenthal, 247 Mo. 238, 265, 152 S. W. 318; Strother v. Barrow, 246 Mo. 241, 254, 151 S. W. 960.] The respondent, however, has in a manner aided the appellant by setting forth in an addi-

tional abstract the substance and sort of description of the contract, the correctness and sufficiency of which are not challenged.

The order for the goods in question seems to have been written in technical and abbreviated mercantile terms not easily understood by us and perhaps not by defendant, a country merchant, and he so testified. We surmise that the difficulty of understanding and reproducing this order in an intelligible form is the reason appellant did not attempt to do so in his abstract but he has not taken the proper steps to bring the original here; if indeed that would aid the matter, of which we have serious doubts. It is shown that at the end of the order and immediately preceding the defendant's signature are the words "All above F. O. B. Niangua," and that Niangua is the railway station to which the goods were shipped for defendant. It also appears that the order was made out on a rather lengthy and comprehensive blank form, with the abbreviation "F. O. B." appearing in several places in the order blank but generally in connection with classes of goods not contained in this particular sale and no place is named in connection therewith. In one place, however, this line occurs: "Fencing 74 1-2 per cent off list F. O. B. Pbg.," the "Pbg." being in pencil. This it is claimed means F. O. B. Pittsburg, and charged defendant with the payment of the freight from Pittsburg, the initial point of the shipment. It should be here said that there are several other classes of goods covered by this order and on them plaintiff concedes that it was to pay the freight to Niangua, its contention being, as we understand it, that the words "All above F. O. B. Niangua" apply only to the goods other than fencing. The defendant testified that he understood the meaning of F. O. B. and correctly interpreted "F. O. B. Niangua" to mean that plaintiff would deliver the goods free at Niangua. He says he noticed the words, just preceding where he signed, "All above

F. O. B. Niangua," and knowing that such was the agreement he did not carefully read the whole order, especially the printed part, and did not notice the letters "Pbg." in the connection above mentioned, and would not have understood the same if he had noticed them. No one testified that Pbg. meant Pittsburg and we would hesitate to hold that it is such a well-known abbreviation that plaintiff should be conclusively held to have so understood it. If his side of the controversy is to be believed, as the jury did, then both the salesman and defendant intended to so fill out the order as to have *all* the goods purchased delivered free at Niangua, and that such was the understanding is clearly shown by the subsequent acts of the parties. We think we are abundantly justified in holding that the written order is so far ambiguous as to admit oral evidence of the circumstances and reasons for making the contract and showing the true understanding and meaning of the same. [Bertig-Smythe v. Lumber Co., 112 Mo. App. 259, 267, 86 S. W. 870; Thetford v. Insurance Co., 140 Mo. App. 254, 257, 124 S. W. 39; Kneisley Lumber Co. v. Stoddard Co., 113 Mo. App. 306, 314, 88 S. W. 774; Wheless v. Grocer Co., 140 Mo. App. 572, 584, 120 S. W. 708.]

The jury under a proper instruction found that the real contract of the parties was that plaintiff was to pay the item of freight and hence cannot collect same from defendant. All the errors complained of relate to this proposition and need not be noticed further. It results that the judgment is affirmed.

*Robertson, P. J.,* concurs. *Farrington, J.,* concurs.